UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM B. FOBBS,<br><br>    Plaintiff,<br><br>v.<br><br>FRANK KENDALL,<br><br>    Defendant. | Case No. 17-cv-03901-JCS<br><br>**ORDER REGARDING MOTION FOR ATTORNEYS' FEES**<br><br>Re: Dkt. No. 73 |

## I.   INTRODUCTION

Plaintiff William Fobbs accepted an offer of judgment under Rule 68 of the Federal Rules of Civil Procedure that Defendant the Secretary of the Air Force (the "Secretary") served on May 4, 2021. That accepted offer included "reasonable attorneys' fees to the date of this offer in an amount to be determined by the Court." Dkt. 68-1 ¶ 3. Fobbs now moves for attorneys' fees. The Court held a hearing on October 15, 2021. For the reasons discussed below, the motion is GRANTED in part and DENIED in part.[1]

## II.   BACKGROUND

### A.   Procedural History

Fobbs brought this action in 2017 asserting claims for discrimination based on race and retaliation under Title VII of the Civil Rights Act of 1964 in his work as a civilian police officer for the United States Air Force. Compl. (dkt. 1). The case was assigned to the Honorable Elizabeth Laporte. The parties participated in an unsuccessful settlement conference in February of 2018. Dkt. 21. Upon Judge Laporte's retirement, the case was reassigned to the undersigned

---

[1] The parties have consented to the jurisdiction of a magistrate judge for all purposes under 28 U.S.C. § 636(c).

magistrate judge.[2]  The parties repeatedly stipulated to stay the case pending the resolution of two separate tracks of administrative proceedings: (1) Fobbs's appeal to the Merit Systems Protection Board ("MSPB") challenging his indefinite suspension, where Fobbs ultimately prevailed and received back pay and an award of attorneys' fees; and (2) Fobbs's appeal of the Department of Defense Consolidated Adjudication Facility's preliminary and final decisions revoking his security clearance, which was ultimately affirmed and led to the termination of his employment effective September 30, 2020.  The parties participated in a second settlement conference on April 28, 2021.  On May 4, 2021, the Secretary made an offer of judgment under Rule 68 in the amount of $20,001.00 plus costs and reasonable attorneys' fees through that date, which Fobbs accepted.  Dkt. 68.[3]  The Clerk entered judgment accordingly on July 26, 2021.  Dkt. 71.

Fobbs filed his present motion—the only substantive motion by either party in the more than four years this case has been pending—on August 9, 2021.  Mot. (dkt. 73).  After the parties failed to negotiate regarding an award of fees and Fobbs's attorney did not file a reply addressing the issues raised in the Secretary's opposition brief (dkt. 75), the Court ordered the parties to negotiate in good faith and ordered Fobbs to file a reply if the parties were unable to resolve the matter.  Dkt. 76.  Fobbs filed a reply on October 1, 2021.  Reply (dkt. 78).

### B.   The Parties' Arguments

Fobbs's motion seeks $98,361 in attorneys' fees based on nearly 300 hours of work—a request that Fobbs reduces in his reply, addressed separately below.  Mot. at 3.  He contends that he is entitled to fees not only under the terms of the Secretary's Rule 68 offer but also as the prevailing party under Title VII, 42 U.S.C. § 2000e-5(k).  Mot. at 4–5.  Fobbs seeks fees at the rates of $135 per hour for paralegal services, $230 per hour for two associate attorneys,[4] and $575

---

[2] The case was also briefly assigned to the Honorable Alex Tse, who recused himself, dkts. 43–44, and to the Honorable Kandis Westmore and the Honorable Sallie Kim, dkts. 45–46.

[3] Although Fobbs's acceptance of that offer was dated May 4, 2021 and filed June 3, 2021, the parties represented in a case management statement that Fobbs accepted the offer on May 18, 2021.  *See* dkts. 68, 69.

[4] Fobbs's motion refers to the $230 rate as applying to "an associate attorney with two years of experience," but his calculation of fees applies that rate to two different attorneys: Scott Nakama, who was admitted to practice law in 2014, and Mara Sackman, who was admitted to practice in 2019.  *See* Mot. at 7–8.

2

per hour for an attorney with thirty-three years of experience. *Id.* at 7. He notes that an administrative judge in related proceedings before the MSPB found those rates to be reasonable. *Id.* at 8 (citing Sackman Decl. (dkt. 73-2) ¶ 13 & Ex. B).

      The Secretary contends that fees should be limited to $36,676. Opp'n at 18. According to the Secretary, Fobbs did not provide documentation to support his attorneys' hourly rates, but the Secretary acknowledges that Fobbs's representation agreement calls for those rates and does not seek a reduction in fees based on hourly rates. *Id.* at 5–6. The Secretary argues that, under the terms of the Rule 68 offer in this case, Fobbs cannot recover either fees incurred after the Rule 68 offer was served (accounting for $10,452.50 of Fobbs's request) or fees incurred in administrative proceedings (accounting for between $23,494 and $40,591 of Fobbs's request). *Id.* at 7–11. The Secretary identifies billing entries totaling $10,641.50 for topics like internal communications, consultation with outside counsel and union representatives, and two attorneys attending a settlement conference as purportedly evincing failure to exercise billing judgment. *Id.* at 11–13. The Secretary also argues that billing entries totaling $11,212.50 (of which all but $2,415 overlap with the Secretary's argument that time spent on administrative proceedings is not recoverable) should be disallowed because they are too vague to determine whether those fees were reasonably incurred. *Id.* at 13–14 & n.8. The Secretary further proposes a small reduction of $345 for certain purportedly block-billed time entries, notes that Fobbs's representation agreement calls for his counsel to receive half of his award,[5] and contends that the full request is disproportionate to the degree of success in the case, although the Secretary does not argue that the degree of success warrants any reduction beyond the other specific defects in Fobbs's request. *Id.* at 15–18.

      Fobbs contends in his reply that he has sufficiently supported his attorneys' hourly rates and that the Secretary misrepresented the evidence Fobbs offered to support those rates. Reply at 1–2. He argues that the Rule 68 offer did not specifically limit fees to those incurred in this

---

[5] It is not clear this is accurate. The agreement calls for counsel to receive the *greater* of any award of fess or a percentage of the total recovery, and the fees awarded by this order would seem to be greater than the percentage option. *See* Opp'n Ex. D § 4(b). The parties have not addressed this issue in any detail, however, and the Court has no need to interpret the terms of Fobbs's fee agreement.

3

judicial action, and that since Title VII permits a prevailing party to recover fees for administrative proceedings and since limitations on fees recoverable under Rule 68 should be construed narrowly, his fees for related administrative proceedings fall within the scope of the Rule 68 offer and acceptance. *Id.* at 2–6. Fobbs concedes, however, that he cannot recover fees incurred after the offer, and thus reduces his request by $10,614.50. *Id.* at 6. Fobbs contends that his attorneys exercised sufficient billing judgment, provided sufficient detail in their records, and did not engage in impermissible block billing. *Id.* at 7–11. He also argues that his request for fees is not disproportionate to his success. *Id.* at 12–15.

### III. ANALYSIS

#### A. Legal Standard

Rule 68 allows a defendant to serve "an offer to allow judgment on specified terms, with the costs then accrued." Fed. R. Civ. P. 68(a). If the plaintiff does not accept the offer, and ultimately receives a judgment less favorable than the offer, the plaintiff must pay the defendant's costs incurred after the offer was made. Fed. R. Civ. P. 68(d). "Once accepted, an offer of judgment becomes a settlement agreement," to be interpreted using "the usual rules of contract construction." *Miller v. City of Portland*, 868 F.3d 846, 850 (9th Cir. 2017) (citations omitted).

Here, the parties' agreement calls for Fobbs to recover "reasonable attorneys' fees to the date of [the Secretary's] offer." Dkt. 68-1. Federal courts have adopted the "lodestar" method for calculating the amount of reasonable attorneys' fees. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The lodestar figure is the product of the hours counsel reasonably spent on the case and a reasonable hourly rate. *Id.* To determine whether claimed hours are reasonable, the Court must review attorneys' time records to determine whether the hours are adequately documented in a manner that can be properly billed directly to clients. *Id.* at 434. Reasonableness is determined based on the prevailing market rate for similar work by similarly qualified counsel, not the amount that the attorneys would have actually charged the prevailing party. *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007). Decisions by other courts regarding the reasonableness of the rate sought may provide evidence to support a finding of reasonableness. *See Widrig v. Apfel*, 140 F.3d 1207, 1210 (9th Cir. 1998) (holding that a rate set by a district court based, in part, on the rate

4

awarded to same attorney in another case, was reasonable).

**B.  Hourly Rates**

Fobbs seeks hourly rates of $575 for his lead counsel Jocelyn Burton, who has been a member of the California Bar since 1988, $230 for attorney Scott Nakama, who was admitted to practice in 2014, $230 for attorney Mara Sackman, who was admitted to practice in December of 2019, and $135 for paralegal Helen O'Keefe.  Mot. at 7–8.  He cites caselaw awarding similar or higher rates to attorneys and paralegals with similar practice experience, declarations describing his counsel's experience, and the decision of an MSPB administrative judge in proceedings related to this case awarding fees at this rate.  *Id.* at 6–8 (citing, *e.g.*, *Polee v. Cent. Contra Costa Transit Auth.*, No. 18-cv-05405-SI, 2021 WL 308608 (N.D. Cal. Jan. 29, 2021)).  The Secretary asserts that Fobbs has not sufficiently supported the reasonableness of the rates he seeks, but does not specifically object to these rates or propose any reduction.  Opp'n at 5–6.

Fobbs has provided little evidence of the *prevailing* rates for similarly qualified counsel.  His assertion that he seeks "$230 for an associate attorney with two years of experience" also fails to distinguish between Nakama and Sackman, or to address the fact that Nakama had significantly more than two years of experience during his work on this case, while Sackman had been admitted to practice for less than two years during some of her work on this case.  *See* Sackman Decl. Ex. A (billing records indicating that Nakama worked on the case into early 2020, when he had been admitted to the bar for more than five years, while Sackman began her work on the case in early 2021, when she had been admitted for just over one year).  Nevertheless, based on the cases cited in Fobbs's motion and this Court's own familiarity with prevailing rates in the local market, the Court finds the rates that Fobbs seeks to be reasonable.[6]

**C.  Administrative Proceedings**

The Secretary contends that "[t]he express language of the Rule 68 offer, limits the scope

---

[6] In reaching this conclusion, the Court does not specifically decide whether an hourly rate of $230 is appropriate in an employment discrimination case for an attorney with just over one year of experience—i.e., Sackman, during her earliest work on this case.  To the extent it might not be, it is offset by Fobbs seeking no higher rate for Nakama's work when he had significantly more experience.

of compensable fees to those incurred in the 'action' before this Court, and does not extend to the precursor administrative 'proceedings.'" Opp'n at 9. The Secretary is incorrect. The offer reads in relevant part as follows:

> In this action, Plaintiff William B. Fobbs asserts Title VII claims against John P. Roth, [at the time, Acting] Secretary of the United States Air Force, in his official capacity. With no admission of liability whatsoever, and in the interest of reaching a good-faith accommodation and settlement, Defendant hereby offers to allow entry of judgment against him pursuant to Rule 68 of the Federal Rules of Civil Procedure as follows:
>
> 1. Plaintiff William B. Fobbs shall recover from Defendant the sum of twenty thousand and one dollars ($20,001.00);
>
> 2. Plaintiff William B. Fobbs shall recover from Defendant costs incurred to the date of this offer;
>
> 3. Plaintiff William B. Fobbs shall recover from Defendant reasonable attorneys' fees to the date of this offer in an amount to be determined by the Court; and
>
> Pursuant to Rule 68, Plaintiff may accept this offer, up to and including May 18, 2021, by serving written notice of her acceptance on Defendant's attorneys of record (The United States Attorney's Office). If the offer is accepted, it will be filed with the Court, along with a request for entry of judgment.

Dkt. 68-1.

The offer does not expressly limit fees to those incurred in this action. Its only reference to "this action" is in a prefatory sentence explaining the nature of the action. Under the terms of the offer, "Fobbs shall recover from Defendant reasonable attorneys' fees to the date of this offer in an amount to be determined by the Court," with no express limitation on how those fees were incurred. *Id.*[7] That language is distinguishable from the case on which the Secretary primarily relies, where the offer at issue included "the costs and compensable attorneys' fees [the plaintiff] has incurred *in the above-captioned action*, which includes two consolidated cases . . . , prior to the date of this offer in an amount to be determined by the Court." *Mahtesian v. Snow*, Nos. 03-5372MMC * 04-1306MMC, 2004 WL 2889922, at *2 (N.D. Cal. Dec. 14, 2004) (emphasis added).

---

[7] The Secretary also misquotes the Rule 68 offer as purportedly having "entitled Plaintiff to seek 'compensable attorney's fees'"—a phrase that does not appear in the offer. Opp'n at 9.

6

That said, at least some limitation is implied—it would of course be unreasonable to interpret the offer as encompassing attorneys' fees incurred for entirely unrelated purposes while this case was pending, like estate planning or defending a traffic ticket. A number of different, potentially overlapping interpretations are plausible, such as fees incurred for work reasonably necessary to advance this litigation, fees that would be recoverable if Fobbs had prevailed on the merits, or the Secretary's preferred interpretation of fees for work performed specifically for proceedings before this Court.

The parties agree that ambiguity in the Secretary's Rule 68 offer is construed against the drafter. *See* Opp'n at 7 (citing *Miller*, 868 F.3d at 851); Reply at 4. The Secretary also acknowledges that resolution of administrative proceedings within the Department of Defense regarding Fobbs's security clearance "was central to Plaintiff's ability to continue working as a civilian police officer for the Air Force" and thus "critical to the parties' ability to negotiate a resolution of this action." Opp'n at 3. Construing the ambiguity of the Secretary's Rule 68 offer in Fobbs's favor, the Court finds fees for such "central" and "critical" administrative proceedings to be recoverable.[8]

It is less clear that the MSPB proceedings were necessary to this case. Fobbs has not suggested that he was required to exhaust remedies with that agency before pursuing his Title VII claims in this Court, and the only decision in the record here from those proceedings—granting a motion for attorneys' fees—indicates that Fobbs's administrative claim was based on a theory that his employer could not prove the charge that led to his indefinite suspension, not that it was discriminatory or retaliatory. Sackman Decl. Ex. B. Fees incurred for parallel administrative proceedings seeking similar relief based on a different theory than Fobbs asserted in this case

---

[8] Fobbs is correct that under Title VII, federal courts may award fees for at least some administrative proceedings. The Ninth Circuit case he cites, however, considered fees incurred in "Title VII administrative proceedings" before the EEOC. *Potter v. Winter*, 603 F.3d 1113, 1114 (9th Cir. 2010). The Supreme Court decision on which *Potter* is based in turn relied on a provision of Title VII "authoriz[ing] a fee award to the prevailing party in 'any . . . proceeding under this title.'" *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 62 (1980) (citation omitted). Fobbs has not argued that proceedings before the Department of Defense were "under" Title VII. Because the Court finds such fees recoverable under the terms of the Rule 68 offer as necessary to the resolution of this case, the Court need not decide whether they would also be recoverable under the reasoning of *Potter* and *Carey*.

7

might not be recoverable. But Fobbs asserts that he does not seek fees for those proceedings before the MSPB since an administrative judge already awarded those fees, Reply at 6, and the Secretary has identified no billing records at issue here that are related to the MSPB proceedings rather than this case or the Department of Defense security clearance proceedings.

The Court therefore declines to reduce Fobbs's fee award based on uncompensable administrative proceedings.

### D. Fees Incurred After Service of Offer

Fobbs concedes that his initial request should be reduced by $10,614.50 because he cannot recover fees incurred after the offer of judgment. Reply at 6. His motion is therefore DENIED as to those fees.[9]

### E. Billing Judgment

The Secretary asserts that Fobbs's attorneys failed to exercise billing judgment in seeking $349 in fees for time spent on internal communications among Fobbs's attorneys, fees for 12.1 hours of communication with unspecified "outside counsel," fees for one hour conferring with a union representative, and fees for two attorneys attending a settlement conference.

The fees for internal communications are so minimal as to hardly be worth mentioning. Some degree of communication among attorneys working together on a case is necessary for effective representation. *See Odnil Music Ltd. v. Katharsis, LLC*, No. CIV S-05-0545 WBS JFM, 2006 WL 8458820, at *3 (E.D. Cal. Sept. 22, 2006) ("[A]ctivities such as communications, meetings, and document review are commonplace within, and central to, the legal profession."). While such communications might in some cases reach a point of excess and unreasonableness, the $349 Fobbs seeks for them here, constituting less than one percent of his total request, is reasonable. The one hour of communication with a union representative is similarly de minimis

---

[9] If fees incurred in briefing the present motion were recoverable, the Court would likely reduce them on account of the substandard quality of Fobbs's briefs, which list the wrong defendant in the caption (Secretary Frank Kendall took office in July of this year, replacing Acting Secretary John Roth) and include basic errors of spelling, grammar, punctuation, capitalization, citation, and the like. While those errors do not affect the outcome, they call into question whether thousands of dollars in fees were reasonably incurred in preparing these briefs. Since the parties agree that such fees are not recoverable, however, the quality of the briefs is not material.

and not obviously unreasonable—even if union matters were not directly at issue in this case, a union representative could reasonably be expected to have relevant information about Fobbs's workplace and employment.

According to Fobbs's reply, references to "outside counsel" in his attorneys' billing records in fact refer to defense counsel. Reply at 7. Although that use of the term is unusual and unintuitive, there is no indication that Fobbs's attorneys communicated with any other "outside counsel." Accepting Fobbs's description of these entries, the Court is not persuaded that time spent conferring with opposing counsel in this case was unreasonable.

The Court is also not persuaded that two of Fobbs's attorneys attending the April 28, 2021 settlement conference was unreasonable. A settlement conference is a critical proceeding intended to reach a final resolution of a case. Two attorneys attending a settlement conference is not comparable to, for example, "bill[ing] for three attorneys on a single telephone call." *Cf. Elec. Priv. Info. Ctr. v. Fed. Bureau of Investigation*, 72 F. Supp. 3d 338, 352 (D.D.C. 2014). Fobbs may recover those fees.

### F. Block Billing and Vague Entries

The Secretary objects to three time entries that he characterizes as "block billing." Opp'n at 15. One of those entries—purportedly for 0.4 hours of work on September 24, 2019—does not appear in Fobbs's attorneys' billing records, while the other two total $1,425 for 2.6 hours of work. *See* Sackman Decl. Ex. A. Some degree of block billing of related tasks is permissible, *Sunstone Behav. Health, Inc. v. Alameda Cty. Med. Ctr.*, 646 F. Supp. 2d 1206, 1217 (E.D. Cal. 2009), the minimal use of block billing in the billing records here does not raise significant concerns as to the Court's ability to assess overall reasonableness, *cf. Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007), and the Secretary's devotion of a full subsection of its brief to these three billing entries (only two of which actually exist as described) was almost certainly not worth the time of the parties or the Court.

That said, the vagueness of other entries that are not block-billed raises related concerns about the ability to determine whether time was reasonably spent on the case. The Secretary identifies a number of entries by Jocelyn Burton totaling $11,327.50 with descriptions like

9

"review/analyze written motions and submissions," "Written Motions and Submissions," "Other Written Motions and Submissions," or "Pleadings." Opp'n Ex. G. Other entries with slightly more specific descriptions suggest that the "Written Motions and Submissions" category, as used by Fobbs's attorneys, is so broad as to be nearly meaningless. *See* Sackman Decl. Ex. A (*e.g.*, Aug. 7, 2020 entry reading "review and analyze written motions and submissions - documents obtained from client"; nine entries from July of 2020 identically reading "review/analyze written motions and submissions - reviewing e-mails"). A 1.5 hour time entry by Mara Sackman is described merely as "Services." *Id.* Ex. A (Jan. 25, 2021).

Fobbs's post-hoc explanations of a handful of these entries based on broad "task codes" and their timing in the case are too speculative too fully ameliorate these concerns, and fail to address the bulk of the entries at issue. As two examples, Fobbs rationalizes entries that include only the description "Pleadings" and "Services" as follows:

> Defendant complains that a January 15, 2021 entry bills for "pleadings," none of which were submitted after that date. Plaintiff's Exhibit A includes the task codes A106 (Communicate (with client)) and L210 (Pleading). Defendant is presumably aware that, in the Joint Case Management Statement parties signed on January 15, 2021, parties informed the Court that they were considering filing motions for summary judgment and/or summary adjudication. Reply Decl. ¶ 8 and Exh. F. Therefore, this entry clearly indicates that there was a conversation between Plaintiff's Counsel and Plaintiff, presumably regarding the potential motions for summary judgment and/or summary adjudication.
>
> Similarly, Defendant claims that an entry on January 25, 2021 attempts to bill 1.50 hours for activity simply described as "services." Plaintiff's Exhibit A contains the task codes A103 (Word Processing) and L310 (Written Discovery). On January 14, 2021, Defendant propounded written discovery requests. Reply Decl. ¶ 9 and Exh. H. This entry is clearly related to Plaintiff's responses to these discovery requests. . . . Plaintiff's billing records clearly set out the activities being billed.

Reply at 10. Whatever these entries indicate, they do not do so "clearly." Counsel's "presum[ption]" that the "Pleadings" entry concerned a conversation regarding a never-filed motion for summary judgment and inference that the "Services" entry was "related to" discovery responses do not reflect the sort of documentation necessary to determine whether fees were reasonably incurred.

10

Overly vague billing entries may be excluded entirely from an award of fees. *See Siegel v. Dignity Health*, No. CV-14-02561-PHX-SPL, 2020 U.S. Dist. LEXIS 249842, at *9 (D. Ariz. May 29, 2020); *Ctr. for Food Safety v. Vilsack*, No. C-08-00484 JSW (EDL), 2011 WL 6259891, at *8 (N.D. Cal. Oct. 13, 2011) (citing *Prineville Sawmill Co. v. Longview Fibre Co.*, No. CV 01-1073-BR, 2003 WL 23957141, at *1 (D. Or. Apr. 23, 2003)), *recommendation adopted*, 2011 WL 6259683 (N.D. Cal. Dec. 15, 2011). Here, the Court is satisfied that the time entries at issue at least more likely than not relate to work performed in this case, but the lack of meaningful description makes it difficult if not impossible to determine how much of that time was reasonably incurred. These issues are of particular concern where Fobbs has conceded that he cannot recover fees for proceedings before the MSPB, yet many of his attorneys' billing entries are too vague to determine the proceedings to which they related. The Court therefore reduces the $11,672.50 worth of billing entries addressed at pages 13 and 14 of the Secretary's opposition brief by fifty percent, resulting in a $5,836.25 reduction. *See Fox v. Vice*, 563 U.S. 826, 838 (2011) ("The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.").

### G.   Degree of Success

Courts may consider a plaintiff's degree of success in determining whether all fees incurred by the plaintiff should be recoverable. The Ninth Circuit has addressed the applicable standard as follows:

> In *Hensley*, the Supreme Court set out a two-pronged approach for determining the amount of fees to be awarded when a plaintiff prevails on only some of his claims for relief or achieves "limited success." First, we ask, "did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded?" This inquiry rests on whether the related claims involve a common core of facts *or* are based on related legal theories, with the *focus* on whether the claims arose out of a common course of conduct. Second, we ask whether the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award[.] If the court concludes the prevailing party achieved "excellent results," it may permit a full fee award—that is, the entirety of those hours reasonably expended on both the prevailing and unsuccessful but related claims.

*Ibrahim v. U.S. Dep't of Homeland Sec.* ("*Ibrahim II*"), 912 F.3d 1147, 1172 (9th Cir. 2019) (en

banc) (cleaned up).[10]

Here—aside from proceedings before the MSPB, which are not at issue in the present motion because Fobbs has already received an award of fees in that forum—Fobbs received only the relatively limited relief of $20,001. As far as the Court can tell from the record, Fobbs was entirely unsuccessful in challenging the revocation of his security clearance in administrative proceedings before the Department of Defense, thus limiting the damages he could recover in this action.[11] On the other hand, Fobbs obtained more than merely nominal monetary relief, and given that one purpose of a fee shifting civil rights statute like Title VII is to allow plaintiffs who have been wronged to pursue relief even where the cost of retaining counsel might otherwise be prohibitive, the Court is reluctant to place too much weight on the fact that Fobbs's fees exceed his damages.

Based on the limited relief that Fobbs's counsel ultimately obtained for him, the Court reduces his compensable fees by twenty percent.

## IV. CONCLUSION

For the reasons discussed above, the Court reduces Fobbs's initial request for $98,361 in fees by $10,614.50 based on his concession that he cannot recover fees incurred after the offer of judgment and by $5,836.25 as a fifty-percent reduction of vague billing entries. The Court reduces the remaining $81,910.25 by twenty percent to account for Fobbs's limited success. The Secretary is therefore ORDERED to reimburse Fobbs for reasonable attorneys' fees totaling $65,528.20.

Neither party's briefs on the present motion address Fobbs's separate bill of costs (dkt. 72).

---

[10] In his arguments on this point, the Secretary quotes the panel opinion in *Ibrahim*, *see* Opp'n at 15 (quoting *Ibrahim v. U.S. Dep't of Homeland Sec.*, 835 F.3d 1048, 1060 (9th Cir. 2016)), which the Ninth Circuit reversed en banc with the admonition that the original panel "compounded" a district court's errors and "misapplied the *Hensley* standard." *Ibrahim II*, 912 F.3d at 1153.

[11] The Secretary has not argued that those administrative proceedings were not "related" to Fobbs's claims here within the meaning of the *Henley* standard. Since Fobbs's complaint in this case included allegations regarding the loss of his security clearance, the Court is satisfied that those administrative proceedings "arose from arose from a 'common course of conduct' and are therefore related under *Hensley*." *Ibrahim II*, 912 F.3d at 1175. Accordingly, while Fobbs's failure to retain his security clearance informs the Court's conclusion that he achieved only limited success, it is not grounds to exclude fees for those proceedings—the resolution of which both parties agree was necessary to reach a resolution of this case—in their entirety.

The Clerk shall address that issue in due course. Nothing in the bill of costs appears to be excluded from recovery by the reasoning of this order.

**IT IS SO ORDERED**

Dated: October 15, 2021

JOSEPH C. SPERO
Chief Magistrate Judge